UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE ORIGINAL BRADFORD SOAP WORKS, INC., | : |
| Plaintiff, | : |
| vs. | : C.A. NO. 09-110 |
| BORDEN & REMINGTON CORP., | : |
| Defendant. | : |

## AMENDED COMPLAINT

Plaintiff, The Original Bradford Soap Works, Inc. ("Bradford"), brings this action against Defendant, Borden & Remington Corp. ("Boremco") seeking to recover in excess of $4,000,000.00 in damages, plus attorneys' fees and costs.

## FACTS

1. Bradford is a Rhode Island corporation which designs, develops, and tests soaps. It also manufactures and supplies soaps and soap products and specialty soap bases to its customers.

2. Boremco is a Massachusetts corporation which manufactures and distributes chemicals.

3. On January 1, 2005, Bradford and Schick Manufacturing, Inc. and Schick Asia Limited (collectively "Schick") entered into an agreement whereby Bradford agreed to manufacture a lubricating soap base for Schick. The lubricating soap base product supplied by Bradford was used in a razor manufactured by Schick called the Intuition. The Intuition, marketed primarily as a women's bath and shower razor, has three blades surrounded by a ring

of lubricating soap. The lubricating soap base was supplied in bulk form by Bradford to Schick. The principle ingredient for the unique lubricating soap base supplied to Schick by Bradford is Bradford's proprietary vegetable soap base, VegPride B.

4. Boremco sold raw materials to Bradford at all material times herein.

5. Boremco sold Bradford two different types of caustic chemicals used in the soap-making process: sodium hydroxide ("Caustic Soda") and potassium hydroxide ("Potash"). Caustic Soda and Potash are both utilized in the creation of VegPride B. Both materials are stored separately in bulk containers at Bradford's manufacturing plant.

6. On October 17, 2006, Bradford ordered Potash from Boremco to be used in, among other products, the manufacture of VegPrideB that would be used as the principle ingredient in the manufacture of the lubricating soap base for sale to Schick.

7. On October 19, 2006, Boremco and/or its agents delivered approximately 5,000 gallons of Caustic Soda to Bradford instead of the Potash that Bradford ordered.

8. Boremco's error was latent. All documents associated with the October 19, 2006 delivery including a so-called "straight bill of lading," a certificate of analysis and a subsequent invoice incorrectly indicated that the bulk liquid sold by Boremco and delivered to Bradford was Potash.

9. Bradford loaded the mis-labeled Caustic Soda into its holding tank for Potash and proceeded to manufacture products for its customers, including Schick, utilizing the mis-labeled material that it received from Boremco on October 19, 2006.

10. Following production, Bradford shipped lubricating soap base product to Schick in China. Schick, in turn, incorporated the lubricating soap base product into its production process.

60344-137948
# 958252-P-v1

11.     Schick performed certain quality testing on its products manufactured with the Bradford lubricating soap base; on or about January 6, 2007, Schick concluded that Bradford's lubricating soap base delivered from approximately October 20, 2006 until January 6, 2007 failed its criteria for being acceptable for use in the manufacture of the Schick Intuition razor.

12.     On or about January 10, 2007, Schick informed Bradford that the lubricating soap base it had recently received from Bradford did not meet its requirements. Schick quarantined the lubricating soap base product it had on-hand in China. Schick also quarantined the lubricating soap base product that continued to arrive in China until it was assured that the problem had been identified and corrected.

13.     Bradford quarantined a quantity of manufactured, but not-yet-shipped product, at Bradford's plant in Rhode Island.

14.     After Schick's notification to Bradford, Bradford investigated the matter and discovered that Boremco had delivered the wrong material to Bradford on October 19, 2006.

15.     Bradford notified Boremco about Boremco's mistake. Boremco admitted its error by, among other things, cleaning Bradford's storage tank and replacing the Caustic Soda with Potash at Boremco's own expense.

16.     As a direct result of Boremco's mistake, Bradford incurred significant losses with respect to the product it sold to Schick before discovering Boremco's faulty delivery, and Schick substantially reduced the amount of product it ordered from Bradford, instead, choosing to purchase its lubricating soap base(s) from other supplier(s).

## COUNT I
### Negligence

17.     Bradford restates and incorporates herein by reference the allegations set forth in paragraphs 1 through 16 above as if each were separately and specifically set forth herein.

60344-137948
# 958252-P-v1

18. Boremco had a duty to exercise reasonable care in its delivery and sale of Potash to Bradford on October 19, 2006.

19. Boremco and/or its agents breached their duty of care by, among other things, delivering approximately 5,000 gallons of Caustic Soda, misidentified as Potash, to Bradford's facility on October 19, 2006.

20. Bradford sustained damages as a proximate result of Boremco and/or its agents' negligence.

## COUNT II
### Breach of Contract

21. Bradford restates and incorporates herein by reference the allegations set forth in paragraphs 1 through 20 above as if each were separately and specifically set forth herein.

22. Bradford fully performed all of its obligations under the terms of its agreement with Boremco.

23. Boremco breached its agreement with Bradford and, as a result, Bradford has sustained direct and consequential damages.

## COUNT III
### Misrepresentation

24. Bradford restates and incorporates herein by reference the allegations set forth in paragraphs 1 through 23 above as if each were separately and specifically set forth herein.

25. Boremco knew or reasonably should have known that the representations it made in connection with its sale of Potash (which turned out to be Caustic Soda) were false at the time they were made, and knowingly or negligently failed to inform Bradford of the true nature of the substance delivered to Bradford on October 19, 2006.

26.     Boremco made the above representations with knowledge that they were false, or made them with reckless disregard as to the truth of their falsity.

27.     Boremco intended and should have foreseen that Bradford would rely upon, and be induced by, the representations made by Boremco in connection with the October 19, 2006 sale.

28.     The misrepresentations and omissions by Boremco were material, and Bradford reasonably relied upon said misrepresentations and omissions to its detriment.

## COUNT IV
## Breach of Express Warranty

29.     Bradford restates and incorporates herein by reference the allegations set forth in paragraphs 1 through 28 above as if each were separately and specifically set forth herein.

30.     Boremco's representations that it was delivering Potash to Bradford on October 19, 2006 constituted an express warranty by Boremco.

31.     Boremco breached its express warranty by causing Caustic Soda to be delivered instead of Potash.

32.     Bradford has sustained damages as a direct and proximate result of Boremco's breach of its express warranty.

## COUNT V
## Breach of Implied Warranty of Fitness

33.     Bradford restates and incorporates herein by reference the allegations set forth in paragraphs 1 through 32 above as if each were separately and specifically set forth herein.

34.     Boremco knew and/or should have known the purpose for which the ordered Potash would be used and that Bradford was relying upon Boremco's knowledge and skill to furnish Bradford with Potash.

60344-137948
# 958252-P-v1

35. Boremco warranted by implication that its October 19, 2006 delivery to Bradford would be fit for the purpose for which it was to be used.

36. Boremco's October 19, 2006 delivery was not fit for the purpose for which it was to be used, as warranted by Boremco.

37. Bradford sustained damages as a direct and proximate result of Boremco's breach of its implied warranty.

## COUNT VI
### Breach of Implied Warranty of Merchantability

38. Bradford restates and incorporates herein by reference the allegations set forth in paragraphs 1 through 37 above as if each were separately and specifically set forth herein.

39. Boremco was, and at all times relevant hereto, a merchant engaged in the sale of hydroxide.

40. By selling and delivering approximately 5,000 gallons of what it titled Potash to Bradford on October 19, 2006, Boremco warranted by implication that the material was sufficiently merchantable to pass without objection in the trade and was suitable for the purposes for which the Potash was ordinarily used.

41. The Potash was not sufficiently merchantable to pass without objection in the trade and, in fact, was not Potash at all, but instead, was Caustic Soda, and was not suitable for the purposes for which the Caustic Potash was ordinarily used.

42. Bradford sustained damages as a direct and proximate result of Boremco's breach of its implied warranty of merchantability.

WHEREFORE, Bradford requests that this Court:

1. Award Bradford its actual damages together with interest thereon, costs, and attorneys' fees against Boremco;

    2.      Award Bradford its consequential damages together with interest thereon, costs, and attorneys' fees against Boremco; and

    3.      All such other relief as this Honorable Court deems just.

> THE ORIGINAL BRADFORD SOAP WORKS, INC.
>
> By its Attorneys,
>
> /s/ Jeffrey A. Mega
> Gerald J. Petros (#2931)
> Jeffrey A. Mega (#6441)
> Hinckley, Allen & Snyder LLP
> 50 Kennedy Plaza, Suite 1500
> Providence, RI  02903
> (401) 274-2000
> (401) 277-9600 (facsimile)

DATED:   March 16, 2009

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues and claims triable of right to a jury.

> THE ORIGINAL BRADFORD SOAP WORKS, INC.
>
> By its Attorneys,
>
> /s/ Jeffrey A. Mega
> Gerald J. Petros (#2931)
> Jeffrey A. Mega (#6441)
> Hinckley, Allen & Snyder LLP
> 50 Kennedy Plaza, Suite 1500
> Providence, RI  02903
> (401) 274-2000
> (401) 277-9600 (facsimile)

DATED:   March 16, 2009

## CERTIFICATION

      I hereby certify that on March 16, 2009, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

      /s/ Jeffrey A. Mega

60344-137948
# 958252-P-v1